**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| RAELETTE LYNN, | ) | CASE NO. 1:20-CV-02274-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | **MEMORANDUM ORDER AND** |
| | ) | **OPINION** |
| Defendant, | ) | |

## I.     Introduction

Plaintiff, Raelette Lynn ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 15). Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Lynn SSI and DIB benefits.

## II.     Procedural History

On March 16, 2016, Claimant filed applications for SSI and DIB, alleging a disability onset date of January 24, 2016. (ECF No. 12, PageID #: 382, 389). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No 12, PageID #: 321). On February 12, 2018, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12,

PageID #: 166). On June 18, 2018, the ALJ issued a written decision that was partially favorable. (ECF No. 12, PageID #: 269). The ALJ concluded that Claimant was not disabled prior to October 4, 2017 but became disabled on that date because her age category changed to an individual closely approaching advanced age and there were no longer any jobs she could perform. (ECF No. 12, PageID #: 283–84). Claimant appealed the decision, and on April 29, 2019, the Appeals Council remanded the claim for a new hearing. (ECF No. 12, PageID #: 291).

The same ALJ held a new hearing on November 13, 2019, during which Claimant, represented by counsel, and a different impartial vocational expert testified. (ECF No. 12, PageID #: 124). On December 20, 2019, the ALJ issued a written decision finding Claimant not disabled. (ECF No. 12, PageID #: 95). The ALJ's decision became final on September 10, 2020, when the Appeals Council declined further review.  (ECF No. 12, PageID #: 84).

On October 8, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 18). Claimant asserts the following assignments of error:

> (1) The ALJ's holding that Ms. Lynn can perform a range of light work is not supported by substantial evidence
>
> (2) The ALJ failed to provide good reasons for rejecting Dr. Furlan's opinion in violation of treating physician rule
>
> (3) The ALJ's Residual Functional Capacity finding is in conflict with the DOT and SSR 00-04P

(ECF No. 14 at 14, 19, 22).

## III.    Background

### A.        Relevant Hearing Testimony

#### 1.            Claimant's Testimony

The ALJ summarized the relevant testimony from Claimant's hearings:

On a hearing held on February 12, 2018, the claimant testified that she cannot work because of both her physical and mental symptoms. Her toes are bent. She has no grip in her feet, and has no balance in her feet. She said that she has a burning and tingling sensation in her feet all the time. She wears an orthotic on her left foot due to her foot drop. She uses a cane when she needs to by herself, and it helps with her balance. She has no grips in her hands, and she believes she can only lift 10 pounds with both hands. She stated that she can sit for roughly 20 minutes before experiencing numbness. She can stand about 15-20 minutes, and can walk for approximately 15 minutes before needing to sit down. She is able to cook, she reads books, and works around the house such as cleaning the house. She works with the youth at her church and other community service once a month. She goes to the food bank where she cooks food and packs boxes. At the library, she reads books and does projects with her child. Mentally, she reports she hears voices that tell her to do certain things, and she has heard the voices for about a year or so. They are not voices that she recognizes. She stated that she has trouble focusing and concentrating, and can only sleep for four hours at a time at night.

On a hearing held on November 13, 2019, the claimant testified that she has gotten worse since the last hearing. The claimant testified that she has numbness in her feet. She also fractured her toe in two places. She stated that she did not know her toe was fractured, because she has lost feeling in her left foot. She also stated that she fractured her ankle due to poor balancing when descending the stairs. She stated that her toes do not fully bend or extend. She stated that she is constantly worrying, she has poor memory, she is nervous, and she has poor sleep. Additionally, she stated that she has had crying spells about twice per day a few times per week for the past three or four years. She stated that she is depressed due to her physical pain and due to her conditions. She takes Gabapentin 3 times per day at 900 mg. She also takes medication for depression. She stated that about a month or two before the hearing, her doctors increased her dosage.

(ECF No. 12, PageID #: 104–05).

## 2. Vocational Expert's Testimony

The ALJ asked the following hypothetical question of the vocational expert:

[A]ssume an individual who is limited to standing and walking no more than two hours in an eight-hour day. Use of the left lower extremity is limited to occasionally; never climb ladders, ropes or

3

> scaffolds; occasionally balance; frequently stoop, kneel, crouch and
> crawl; avoid all exposure to hazards, operating dangerous moving
> equipment such as power saws and jackhammers; no commercial
> driving and as for mental is limited to routine-type work without
> production pace for time or quantity; limited to speaking, signaling,
> asking questions and serving and no conflict resolution or directing
> the work of others.

(ECF No. 12, PageID #: 137). The vocational expert testified that the individual could not perform

Claimant's past relevant work. (ECF No. 12, PageID #: 137). At the ALJ's request, the vocational

expert listed all the jobs the hypothetical individual could perform. (ECF No. 12, PageID #: 137–

38). The jobs consisted of an office helper, information clerk, and mail clerk. (ECF No. 12, PageID

#: 137–38). Each of these positions is considered "light" work. (ECF No. 12, PageID #: 137–38).

The ALJ then asked the vocational expert if her testimony had been consistent with the Dictionary

of Occupational Titles ("DOT"). (ECF No. 12, PageID #: 138). The vocational expert responded:

> No, it has not. Today, in hypothetical 1, you asked me about
> standing and walking at two hours. The DOT identifies light work
> to be the ability to stand and walk for up to six hours and for the
> ability to lift up to 20 pounds. The jobs that I provided in response
> to these hypotheticals generally are performed at a level where
> they're seated mostly, but they do have to lift sometimes more than
> – between 10 and 20 pounds, which is why they're identified as
> light, so it is not a total difference from the DOT, but it's a step
> away.

(ECF No. 12, PageID #: 138–39).

## B.  Relevant Medical Evidence[1]

The ALJ also summarized Claimant's health records and symptoms:

> In January of 2016, a physical exam showed the claimant with
> decreased range of motion, swelling, stiffness, and weakness. . . .
> Her glucose level was recorded as abnormally high at 212
> (Ex.2F/31). In February of 2016, nerve conduction studies were

---

[1]      Claimant's arguments involve only the ALJ's physical RFC determination. The
Court, therefore, does not discuss the medical evidence surrounding Claimant's mental
impairments.

4

performed in the left upper and lower extremities, showing an abnormal study. There was electrophysiologic evidence consistent with a severe, generalized, active and chronic, axonal, motor and sensory peripheral polyneuropathy. It was further noted that there may be a superimposed non-localizing left peroneal neuropathy. (Ex.4F/9-11). . . .

March 2016 notes show the claimant had foot drop on her left, which is probably secondary to an ankle fracture many years ago and she was unable to dorsiflex or keep her foot in a neutral position and swing through. She was able to mark the deficiency with a high-heeled boot, which she wore then and she was prescribed a carbon fiber graphite anterior shell AFO custom to her measurements (Ex.5F/3). At that time, a neuromuscular ultrasound was performed. There was no ultrasound evidence of left peroneal neuropathy by absolute criteria, or from comparing nerve and muscle parameters side to side. No structural abnormality was appreciated affecting the left peroneal nerve. Muscles supplied by the peroneal nerve were symmetric. Muscles supplied by the tibial nerve were also symmetric. However, it was noted that all the muscles in the distal calf were slightly hypoechoic consistent with the known diabetic neuropathy. It was further noted that it was surprising for a patient with foot drop not to show atrophy or increased echogenicity in the symptomatic side as compared to the asymptomatic side. (Ex.10F/12-13). . . .

In July of 2016, the claimant reported numbness and tingling in her legs and feet. She denied any hypoglycemic episodes. On exam, it was noted that the claimant had no arthralgias, no joint swelling, and no limb pain. She reported fatigue, but not feeling poorly or weight gain. It was noted that she had normal muscle strength and tone, and had a normal gait and station. (id. at 9- 13). . . .

[In August 2016, Claimant's] gait and station were noted as normal, and she had normal movements of all extremities (id. at 5).

The claimant presented to physical therapy in October of 2016 with sharp, shooting pain in both her arms and legs. The sharp, burning pain prevents her from falling asleep at night and also wakes her up. She also cannot walk, stand, or sit for prolonged periods of time due to the pain. She would be able to walk for 10 minutes before having to stop due to pain. She also presented with a left foot drop and limited motion in her left big toe. After therapy, it was noted that the claimant tolerated all treatment without pain. (Ex.14F/12).

The claimant was discharged from therapy in January of 2017, with

5

her prognosis listed as good. Both upper quarter and lower quarter sensations were diminished throughout the body. Distally in the lower quarter, she had significant loss of sensation where she was unable to feel the touch. In the upper quarter, her sensation was diminished farther away from midline. She had minimal sensation in her forearm and hand. She was cautious when moving her left great toe and also to move the left ankle for myotomes. These movements were painful before applying minimal pressure to test the myotome due to her foot drop. The claimant noted that she found the aquatic therapy to be helpful: however, it was noted that there were not measurable changes that had happened. She was discharged due to completion of the program. (Ex.14F/81).

February 2017 treatment notes show the claimant's diabetes was well controlled, and her last AlC was 5.1 (Ex.20F/13). In March of 2017, it was noted by her counselor that the claimant appeared to be doing better physically. The claimant stated that she had been applying for jobs on craigslist and writer discussed this with her and processed the benefits of working. She stated that she felt well enough to work now and that she was wanting to fill her day with things, because "sitting at home waiting for my husband and my kids makes me sad." . . .

The claimant presented to Jason Chao, M.D. in October of 2017, to have a form filled out for her work in childcare. It was noted that in the last three years, she had developed diabetes with significant neuropathy, including foot drop. She was in the process of applying for total disability. She had not fallen in the last 6 months, and she did not need assistance with sitting, standing or walking, even in her home. She did not need assistance in an unfamiliar setting, and she was not using an assistive device (Ex.20F/5). . . .

The claimant also presented to Anthony Furlan, M.D. in January of 2018 due to the claimant's diabetes and neuropathy (Ex.28F). The doctor increased the claimant's Gabapentin to 800 mg. He assessed her with painful diabetic neuropathy (Ex.28F/4). . . .

[I]n April of 2019, the claimant returned to Dr. Chao, who assessed the claimant with peripheral neuropathy. The claimant was still taking Gabapentin at 800mg (Ex.35F/20). The claimant requested a handicapped plate from Dr. Chao (id. at 17).

[I]n July of 2018, the claimant presented to Alexander Craig, DPM and was assessed with neuropathic pain of both feet. He assessed the claimant with Type II diabetes mellitus with neurological manifestations (Ex.30F/36). The claimant complained of painful

calluses. She also complained of burning, tingling, and numbness sensations (id. at 33). The claimant returned to Alexander Craig, DPM in September of 2018 and stated that she had elongated toenails. She continued to report burning, tingling, and numbness (id. at 29). In October of 2018, the claimant reported that her pain was worse with ambulation (id. at 26). The notes from Dr. Chao from October of 2018 state that the claimant had gained a, "significant" amount of weight (Ex.35F/15). However, she reported improved foot pain (id. at 13). In November of 2018 and in January of 2019, the claimant reported to Alexander Craig, DPM that she had experienced improvement with pain (Ex.30F/15, 19).

In February of 2019, the claimant returned to Alexander Craig, DPM and reported intermittent pain (Ex.30F/12). Regarding her left foot drop, the claimant stated that she has a brace to assist with ambulation, but she does not wear it. The claimant did not bring the brace to the examination (id. at 12).

Also in February of 2019, the claimant presented to Jeffrey Stanley, D.O. due to left foot drop, neuropathy, and toe discoloration. He also assessed the claimant with varicose veins of both lower extremities with pain (Ex.36F/3). The doctor advised the claimant to keep her toes clean and dry and to follow up in 6 months (id. at 8).

On June 8, 2019, the claimant had a State agency examination with Jim Bircher, D.O. (Ex.27F). The doctor stated that there was no evidence of muscular asymmetry nor atrophy and no acute joint findings. He further stated that strength and range of motion were within normal limits bilaterally with exception of the left leg deficit as documented. He indicated that she was able to sit, stand, and walk but her gait was unsteady. She was able to rise from the exam table multiple times without problems or assistance. Fine motor coordination and handling were adequate, but there was active tremor noted with any motor task (Ex.27F/6).

In August of 2019, the claimant returned to Alexander Craig, DPM for a diabetic foot examination. The claimant complained of painful calluses. She also complained of left forefoot pain after dropping a bowl on it one week ago. She stated that she was not taking medication for pain (Ex.32F).

(ECF No. 12, PageID #: 105–09).

C.      **Opinion Evidence at Issue**

1.      **State Agency Reviewing Physicians**

7

Dr. David Knierim and Dr. Esberdado Villanueva reviewed Claimant's medical records. (ECF No. 12, PageID #: 198–214, 234–). They stated that Claimant could occasionally lift 20 pounds and frequently lift 10 pounds. (ECF No. 12, PageID #: 207, 244). They indicated that Claimant could stand or walk only 2 hours of an 8 hour workday and limited her to occasional pushing and pulling with the lower left extremity. (ECF No. 12, PageID #: 208, 244). The ALJ gave their opinions "great weight." (ECF No. 12, PageID #: 250). He reasoned that their opinions were consistent with the record. (ECF No. 12, PageID #: 110). He also stated that "[a]lthough the claimant may have had difficulty walking distances and was cautious when moving her left great toe because of pain, nevertheless, physical exams showed normal muscle tone and bulk, normal gait and normal station." (ECF No. 12, PageID #: 110).

### 2.    Treating Physician — Anthony Furlan, M.D.

Dr. Furlan gave two opinions. First, in June 2016, Dr. Furlan completed a medical source statement regarding Claimant's physical capacity. (ECF No. 12, PageID #: 638–39). He opined that Claimant was limited to lifting five pounds occasionally, standing and/or walking for two hours, and rarely climbing, balancing, stooping, crouching, kneeling, and crawling. (ECF No. 12, PageID #: 638). He stated that she could occasionally reach, push, pull, handle and finger. (PageID #: 639). Dr. Furlan also noted that Claimant's pain would interfere with her concentration, take her off task, cause absenteeism. (ECF No. 12, PageID #: 639). He opined that Claimant would require additional unscheduled rest periods and needed to elevate her legs 45 degrees at will. (ECF No. 12, PageID #: 639). Dr. Furlan supported his assessment with his findings that Claimant suffered from left foot drop and severe diabetic neuropathy. (ECF No. 12, PageID #: 638–39).

The ALJ assigned this opinion "little weight." (ECF No. 12, PageID #: 111). He reasoned:

> The undersigned finds the opinion is exaggerated and not fully
> consistent with the record as a whole. For example, there is little to

no evidence to support the limitation that the claimant could only occasionally perform fine and gross manipulation. The claimant's neuropathy limitations are in her left, lower extremity. Consequently, the undersigned finds that the claimant can occasionally use the left, lower extremity. However, the undersigned concurs that the claimant has the residual functioning capacity to stand or walk 2 hours of an 8 hour workday. This portion of Dr. Furlan's opinion is generally consistent with the claimant's activities of daily living including her involvement with church activities. Overall, however, the undersigned gives little weight to the June 2016 opinion evidence of Dr. Furlan.

(ECF No. 12, PageID #: 111).

Second, in January 2018, Dr. Furlan completed another medical source statement. (ECF No. 12, PageID #: 1044–45). In it, he opined that Claimant's ability to lift, carry, stand, walk, and sit were all limited but did not indicate the maximum Claimant was able to do in these categories. (ECF No. 12, PageID #: 1044). He stated that she could occasionally reach and perform fine and gross manipulation. (ECF No. 12, PageID #: 1045). He indicated that she could rarely push or pull. (ECF No. 12, PageID #: 1045). Dr. Furlan also opined that Claimant's pain would interfere with concentration, take her off task, cause absenteeism, and require additional breaks. (ECF No. 12, PageID #: 1045). He supported his opinion by stating that Claimant has footdrop, no feeling in her feet, neuropathic pain, back pain, and poor balance. (ECF No. 12, PageID #: 1045).

The ALJ assigned this opinion "little weight." (ECF No. 12, PageID #: 111). She explained:

Dr. Furlan [] filled out a form using checkmarks and provided no narrative explanation to support. He generically stated in response to most questions she had "no feeling in feet," but this is not accurate. The claimant has feeling in one foot and foot drop in the other. He opined that the claimant is limited to occasional reaching, fine and gross manipulation, but gave no detailed explanation of how "neuropathic pain and back pain" would impact use of upper extremities. He said she would need additional rest time and wrote only the number "8" with no other explanation as to what that number means. He did not refer to any treatment notes, diagnostic test results or dates.

(ECF No. 12, PageID #: 111).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3.      The claimant has the following severe impairments: diabetes mellitus with neuropathy and left foot drop, depression, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

> 4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand or walk no more than 2 hours in an 8 hour work day. She can occasionally use the left, lower extremity. She can never climb ladders ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance. She can frequently stoop, kneel, crouch, and crawl. She must avoid all exposure to hazards, operating dangerous, moving equipment such as power saws and jack hammers. She cannot perform any commercial driving. She is limited to routine type work without production pace for time or quantity. She is limited to speaking signaling asking questions and serving and no conflict resolution or directing the work of others.

> 10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(ECF No. 12, PageID #: 101–02, 104,  114).

## V.    Law & Analysis

### A.    Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is

supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.      Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she

is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.      Discussion

Claimant raises three issues on appeal. First, she argues that the ALJ's conclusion that Claimant can perform light work is not supported by substantial evidence. Second, she asserts that the ALJ violated the treating physician rule by failing to provide good reasons for rejecting Dr. Furlan's opinion. Finally, she suggests that the ALJ's RFC finding conflicts with the DOT and SSR 00-04P—the regulation dealing with the use of vocational experts.

### 1.      The ALJ's RFC Determination is Supported by Substantial Evidence

Claimant argues that substantial evidence does not support the ALJ's determination that Claimant can perform the walking and standing required by light work. Light work involves lifting no more than 20 pounds and frequently lifting 10 pounds. 20 C.F.R. § 404.1567(b). A light work job requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* "[T]he full range of light work requires standing or walking, off and on, for a total of 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

The ALJ concluded that Claimant "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that [Claimant] can stand or walk no more than 2 hours in an 8 hour work day." (ECF No. 12, PageID #: 104). In making her RFC

determination, the ALJ stated:

> The undersigned has considered the claimant's treatment notes in August of 2016, which state that her gait and station were noted as normal, and she had normal movements of all extremities (Ex.19F/5). The undersigned has considered the claimant's work with the church youth group. As explained above, the record shows that the claimant has been able to work at her church, and she was promoted to a leadership position. Although the record does not specifically state how much she is required to lift, carry, stand, and or walk for this position, the undersigned gives some consideration that her work in the church is consistent with standing and walking 2 hours of an 8 hour workday. The undersigned has considered that the claimant elected not to wear her boot for her left foot drop, which also suggests that she is not as limited as she alleges concerning her ability to stand and or walk.

(ECF No. 12, PageID #: 110). In addition, the ALJ relied on multiple medical opinions. She assigned great weight to the State agency consultants' opinion that Claimant could stand or walk 2 hours of an 8 hour work day. (ECF No. 12, PageID #: 110). She agreed with Dr. Furlan's opinion that Claimant could stand or walk 2 hours of an 8-hour workday. (ECF No. 12, PageID #: 111). The ALJ assigned some weight to the state agency physical examiner who opined that Claimant could lift 20 pounds occasionally and 10 pounds frequently. (ECF No. 12, PageID #: 112).

Claimant argues that the ALJ erred because Claimant cannot perform the walking or standing required of light work. The Court first notes, however, that the ALJ agreed that Claimant was incapable of performing the full standing and walking requirements and, therefore, limited her to 2 hours of standing or walking in an 8-hour workday. Claimant does not explain why the ALJ's limitations do not accommodate her impairments or how the evidence the ALJ relied on does not constitute substantial evidence. Indeed, the ALJ supported her determination with objective medical evidence. The ALJ relied on the fact that Claimant had a normal gait and station and normal movements of all extremities in August 2016. Claimant worked at her church and attempted to find employment in food service on her own in July 2018. At the hearing, Claimant

testified that she volunteers at the food bank where she cooks food and packs boxes. Claimant also chose not to wear the boot that was prescribed to her for her foot drop. The ALJ also relied on at least two medical opinions that suggested Claimant could stand or walk 2 hours of an 8 hour work day. This is substantial evidence to support the ALJ's conclusion.

Nevertheless, Claimant points to evidence that she asserts demonstrates that Claimant is not capable of performing the standing and walking requirements of light work activity. However, as Commissioner notes, "a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Claimant similarly argues that the ALJ simply parsed the record "to support a pre-determined conclusion." (ECF No. 14 at 18). However, "[t]he problem with a cherry-picking argument is that it runs both ways. [Claimant] argues the ALJ only focused on the positives, whereas [her] brief emphasizes the negatives. Crediting [Claimant's] argument here would require the Court to re-weigh evidence — which it cannot [] do." *Colvin v. Comm'r of Soc. Sec.*, No. 5:18 CV 1249, 2019 WL 3741020, at *14 (N.D. Ohio May 8, 2019). The Court is satisfied that a reasonable mind could accept the evidence the ALJ relied on as adequate to support her determination. There is, therefore, substantial evidence to support the ALJ's RFC determination.

Additionally, although only in passing, Claimant argues that the ALJ incorrectly used Claimant's "daily activities to undermine credibility regarding the alleged severity" of her pain. (ECF No. 14 at 17). In determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017

WL 5180304, at *2. An ALJ "is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8.

After considering Claimant's allegations of pain, the ALJ concluded that they were not "completely consistent with the record as a whole." (ECF No. 12, PageID #: 113). She reasoned:

> The State agency examination shows that the claimant is able to perform her activities of daily living without difficulty such as bathing, dressing, and feeding herself (Ex.27F/6). In March of 2017, the claimant expressed interest in wanting to work and to occupy her time (Ex.16F/36). By June of 2017, the claimant was working part-time for uber (id. at 42). Also, as referenced above, the claimant had a job interview for food service in July of 2018 (Ex.29F/17), which suggests some ability to work. The undersigned has further considered the claimant's work with the church youth group.

> Furthermore, Dr. Bircher, the physical State agency examiner stated that the claimant's medical conditions seem well controlled on current medications, and there are no acute symptoms that would suggest otherwise (Ex.27F/8). He further noted that muscle atrophy was not present during the examination (id. at 10). There is also some evidence that the claimant has not been entirely compliant with treatment. For example, as stated above, the claimant stated that she does not wear her brace to help her with ambulation and to help her left foot drop condition (Ex.30F/12). She stated the same in March of 2019 (id. at 9).

(ECF No. 12, PageID #: 113).

Claimant argues that the ALJ incorrectly considered her daily activities, such as "minimal cooking and cleaning, and participation in a church group" because they were not performed in a manner equivalent to a 40-hour work week. (ECF No. 14 at 17). The Court disagrees with

Claimant's characterization of the ALJ's reasoning. The ALJ noted that Claimant was capable of taking care of herself without difficulty, as required by SSR 16-3P. *See* SSR 16-3P, 2017 WL 5180304, at *7 (stating that the ALJ will consider a claimant's daily activities when relevant to evaluating the intensity, persistence, and limiting effects on his or her symptoms). The Court also notes that Claimant testified that she volunteered at a food bank where she cooked and packed boxes—activities inconsistent with disabling pain. However, Claimant's daily activities were not the only thing the ALJ found inconsistent with Claimant's allegations. In addition to being inconsistent with Claimant's daily activities, the ALJ concluded that Claimant's subjective allegations were inconsistent with Claimant's employment with Uber, attempted employment in food service, and the objective medical evidence. She also noted that Claimant's symptoms were well controlled on medication and Claimant was not entirely compliant with treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (instructing the ALJ to consider the effectiveness and side effects of any medications); *Dunn v. Comm'r of Soc. Sec.*, No. 1:15-cv-176, 2016 WL 4194131, at *9–10 (S.D. Ohio July 15, 2016) (considering effective treatment a sufficient reason to discredit the claimant's allegations of pain). As such, the ALJ was free to determine that Claimant's symptoms are less likely to reduce her capacity to perform work-related activities. The Court is, therefore, satisfied that the ALJ properly discharged her duties under 20 C.F.R. § 404.1529(c) and SSR 16-3p and her conclusion was supported by substantial evidence. Accordingly, Claimant's first assignment of error is without merit.

## 2. The ALJ Provided Good Reasons for Assigning Dr. Furlan's Opinion Little Weight

Claimant asserts that the ALJ did not provide good reasons for dismissing Dr. Furlan's opinions. Under the treating source rule,[2] an ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley* v. *Comm'r of Soc.* "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. § 404.1527(c)(2) (eff. Aug. 24, 2012). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This

---

[2] The regulations for handling treating source evidence have been revised for claims filed after March 27, 2017.  See 20 C.F.R. § 416.927. Plaintiff filed his claim before the revision took effect.

17

procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The ultimate question is whether the Commissioner's decision is supported by substantial evidence and whether it was made pursuant to proper legal standards. *Cole*, 661 F.3d at 939.

Dr. Furlan provided two opinions in the form of medical source statements. The first medical source statement indicated that Claimant was limited to lifting five pounds occasionally. He marked that Claimant could occasionally perform fine and gross manipulation and could rarely climb, balance, stoop, crouch, kneel, and crawl. Dr. Furlan suggested that Claimant's pain would interfere with her concentration, take her off task, and cause absenteeism. He also stated that Claimant could stand or walk for 2 hours in an 8-hour workday. The ALJ afforded this opinion little weight, reasoning that the opinion was "exaggerated and not fully consistent with the record as a whole." (ECF No 12, PageID #: 111). She pointed out that there was little to no evidence that Claimant could only occasionally perform fine and gross manipulation because her limitations are in her left, lower extremity.

Claimant argues that the ALJ erred in her treatment of this opinion because "the record not only contains consistent treatment notes from Dr. Furlan, but also treatment notes that correspond in date to the RFC opinions provided." (ECF No. 14 at 20). Claimant states that the ALJ simply ignored Dr. Furlan's conclusion that Claimant's pain would result in being off task, absenteeism, and the need for additional breaks. Additionally, Claimant asserts that the ALJ "omit[ted] the longitudinal relationship [and] specialty of Dr. Furlan." (ECF No. 14 at 20). Commissioner responds that the ALJ reasonably evaluated Dr. Furlan's first opinion, giving several good reasons for assigning it little weight. The Court agrees.

18

First, the ALJ stated that Dr. Furlan's opinion was exaggerated and inconsistent with the overall record. The fact that there were treatment notes—assuming they supported Dr. Furlan's opinions—would not change the evaluation because inconsistency is one of the good reasons an ALJ can rely on when affording less weight to a treating source's opinion. *See* 20 C.F.R. 404.1527(c)(4). The ALJ specifically noted that there was little to no evidence to support a limitation on Claimant's ability to perform fine and gross manipulation. Claimant suggests that this is incorrect because she suffers from severe diabetic neuropathy, bilaterally, and a left foot drop. However, Claimant points to no evidence that these diagnoses result in an inability to perform fine or gross manipulation. A lack of evidence supporting Dr. Furlan's opinion that Claimant is limited to only occasionally performing fine and gross manipulation supports the ALJ's finding that Dr. Furlan's opinion was inconsistent with the medical record. Thus, the ALJ's assignment of weight is supported by substantial evidence.

Second, Claimant's argument that the ALJ ignored Dr. Furlan's conclusion that Claimant's pain would result in absenteeism and extra breaks is incorrect. The ALJ specifically stated that Dr. Furlan's opinion was exaggerated and inconsistent with the record as a whole. She gave the example that no evidence supported Dr. Furlan's gross manipulation opinion but did not state that this was the only inconsistency. Claimant neither explains why the ALJ's opinion was not supported by substantial evidence nor points to any evidence that supports Dr. Furlan's opinion that Claimant's pain would interfere with her concentration or cause absenteeism. The Court, therefore, finds no error.

Finally, the fact that the ALJ did not discuss the longitudinal history or Dr. Furlan's specialty was not error. While the ALJ should consider the length of the relationship and specialty of the treating source, the regulations "expressly require only that the ALJ's decision include 'good

reasons . . . for the weight . . . given[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (alterations in original) (citations omitted). The ALJ gave two reasons—inconsistency and exaggeration—for assigning Dr. Furlan's opinion little weight. Thus, she did not err in assigning Dr. Furlan's first opinion little weight despite not discussing the other factors.

In his second medical source statement, Dr. Furlan opined that Claimant's ability to lift, carry, stand, walk, and sit were all limited but did not indicate the maximum Claimant was able to do in these categories. He suggested that she could occasionally reach and perform fine and gross manipulation. He indicated that she could rarely push or pull. Dr. Furlan also opined that Claimant's pain would interfere with concentration, take her off task, cause absenteeism, and require additional breaks. The ALJ again assigned Dr. Furlan's opinion little weight, reasoning that the opinion was a check box form with no narrative explanation to support it. Dr. Furlan "generically stated in response to most questions that she had 'no feeling in feet,' but this is not accurate." (ECF No. 12, PageID #: 111). Instead, Claimant has feeling in one foot and foot drop in the other. Additionally, the ALJ noted that Dr. Furlan gave no explanation of how neuropathic pain and back pain would impact the use of Claimant's upper extremities.

Claimant argues that the ALJ erred in evaluating the second opinion because the record contained a corresponding treatment note of the same date documenting objective findings. She argues that the ALJ's failure to cite the treatment note in her discussion made her reason for discrediting the ALJ's opinion inaccurate and inadequate. Additionally, she states that the ALJ ignored Dr. Furlan's opinion that Claimant's pain would result in off-task behavior, absenteeism, and additional breaks.

The Court concludes that the ALJ's decision was supported by substantial evidence. Upon

20

its own review, the Court notes that Dr. Furlan did not cite the corresponding treatment note as support for his opinion. Moreover, the corresponding treatment note does not explain any of Dr. Furlan's conclusions. The treatment note simply lists Claimant's diagnoses, current and past medical history, social and family history, medications, and a few notes stating things such as "no changes Since October" and "tearful." (ECF No. 12, PageID #: 1103–05). This is not sufficient explanation to support Dr. Furlan's check box opinion. *See Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan 12, 2018) ("Numerous decisions have found that the use of checklist or check-the-box forms in which the doctor provides little or no accompanying explanation for the assessed limitations . . . are unsupported and, therefore, the ALJ may properly discount the treating source opinions." (citing *Kepke v. Comm'r of Soc. Sec.*, F. App'x 625, 630 (6th Cir. 2016))). Thus, the ALJ properly assigned little weight to Dr. Furlan's second opinion. While Claimant argues that the ALJ ignored Dr. Furlan's opinion on Claimant's need for breaks and absenteeism, the ALJ's lack of support reasoning applies to the entire check box opinion, including Dr. Furlan's opinion on Claimant's absenteeism, need for breaks, and concentration. In fact, the ALJ specifically stated that the ALJ did not support his additional breaks opinion but merely wrote the number 8 "with no other explanation." (ECF No. 12, PageID #: 111). This lack of explanation, again, is insufficient to support Dr. Furlan's opinion. Accordingly, because Dr. Furlan did not support his opinions, the ALJ did not err in assigning them little weight.

### 3.  The ALJ did not Err in Determining Claimant's RFC

Claimant's final assignment of error consists of three arguments. First, she argues that the ALJ's RFC determination is inconsistent with the definition of light work and is therefore in conflict with the DOT. (ECF No. 14, PageID #: 1290). As noted above, light work involves lifting

no more than 20 pounds and frequently lifting 10 pounds. 20 C.F.R. § 404.1567(b). A light work job requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* "[T]he full range of light work requires standing or walking, off and on, for a total of 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). The ALJ concluded that Claimant "has the residual functional capacity to perform light work . . . except that [Claimant] can stand or walk no more than 2 hours in an 8 hour work day." (ECF No. 12, PageID #: 104).

Claimant argues that limiting the walking component of light work is inconsistent with the definition of light work. However, "this court and the Sixth Circuit have already found that a two-hour stand/walk requirement is not incompatible with a 'light work' determination." *Barron-Green v. Comm'r of Soc. Sec.*, No. 1:18 CV 1705, 2019 WL 4194142, at *7 (N.D. Ohio Sept. 4, 2019). What matters is that a claimant can do substantially all of what is required of light work. *See* 20 C.F.R. § 404.1567(b); *Barron-Green*, 2019 WL 4194142, at *7. Here, the ALJ found that Claimant could occasionally lift 20 pounds and frequently lift 10 pounds and walk or stand for 2 hours. The ALJ did not limit Claimant's ability to sit for long periods or her ability to push or pull. Thus, Claimant can do substantially all the activities necessary for light work. The Court, therefore, finds the ALJ's RFC determination is not in conflict with the regulations.

Second, Claimant argues that the ALJ's reliance on the vocational expert's testimony was flawed because the vocational expert attempted "to rewrite the regulatory definition of 'light' and 'sedentary'" in violation of SSR-004p. SSR-004p provides that "SSA adjudicators may not rely on evidence provided by a [vocational expert, vocational specialist,] or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that

are inconsistent with [the] regulatory policies or definitions." SSR 00-4p, 2000 WL 1898704, at *3. "Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling." *Id.*

In response to the ALJ's hypothetical outlining Claimant's abilities and limitations, the vocational expert stated that there were a few light work positions that this hypothetical individual could perform. The vocational expert stated that her testimony was not consistent with the DOT because:

> The DOT identifies light work to be the ability to stand and walk for up to six hours and for the ability to lift up to 20 pounds. The jobs that I provided in response to these hypotheticals generally are performed at a level where they're seated mostly, but they do have to lift sometimes more than – between 10 and 20 pounds, which is why they're identified as light, so it is not a total difference from the DOT, but it's a step away.

(ECF No. 12, PageID #: 138–39). Claimant argues that the vocational expert rewrote the definition of light and the ALJ therefore improperly relied on her testimony. Commissioner responds that Claimant misunderstands SSR 00-4p. SSR 00-4p, Commissioner argues, is aimed at stopping vocational experts from reclassifying jobs identified as sedentary or light work. Here, the vocational expert did not reclassify the jobs but identified a number of light jobs that can be performed with the limitations outlined by the ALJ. The Court agrees.

When an ALJ determines that a claimant's RFC falls between the "grids" of light work and sedentary work, the claimant's RFC falls somewhere in the middle. *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 680 (6th Cir. 2013). When a Claimant's RFC "is not squarely within either grid, the grid guidelines are not binding and instead are used only as an analytical framework." *Id.* (citations omitted). In those instances, SSR 83-12 directs the ALJ to call a vocational expert to

testify as to whether a significant number of jobs exist that a hypothetical individual with the claimant's limitations can perform. *Id.* "So long as the hypothetical is accurate, the [ALJ] may rely on the vocational expert's testimony to find that [the claimant] can perform a significant number of jobs in the national economy." *Id.* That is exactly what occurred here. The vocational expert did not reclassify any jobs. Claimant fell between two grids and the vocational expert testified that a person with Claimant's limitations could still perform certain light jobs. Claimant's argument is therefore without merit.

Finally, Claimant asserts that the ALJ failed to resolve the conflict between the second vocational expert's light work determination and the prior vocational expert's and State Agency vocational expert's determination that a limitation of standing and walking two hours in an eight-hour workday is indicative of sedentary work. However, Claimant does not provide any explanation or support for her argument that this was error. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996–97 (6th Cir. 1997) (alterations in original) (citations omitted). Accordingly, the Court concludes that the ALJ did not err in determining Claimant's RFC.

**VI.    Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Claimant Supplemental Security Income and Disability Insurance Benefits.

Dated: November 19, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE